CONTINENTAL CASUALTY CO. *v.* J. D. COBB

5-5347                                           459 S. W. 2d 67

Opinion delivered October 26, 1970

*Rose, Barron, Nash, Williamson, Carrol & Clay,* for appellant.

*Charles A. Walls* and *Moses, McClellan, Arnold, Owen & McDermott,* for appellee.

J. FRED JONES, Justice. This is an appeal by Continental Casualty Company, hereinafter referred to as "the company," from a judgment of the Lonoke County Circuit Court entered on a jury verdict in favor of J. D. Cobb for $9,600 on a health and accident insurance policy. Under the policy the company agreed to pay Mr. Cobb monthly sickness indemnity as follows:

"TOTAL DISABILITY AND CONFINEMENT. When, as the result of sickness and commencing while this policy is in force, the insured is wholly and continuously disabled and prevented from engaging in each and every duty pertaining to his occupation, the Company will pay periodically the Monthly Indemnity stated in the Schedule for the period the Insured is so disabled and necessarily and continuously confined within the house, not to exceed the Maximum Period Confining Sickness Indemnity stated in the Schedule as the result of any one sickness. Confinement shall not be terminated by reason of the transportation of the Insured, at the direction of his doctor, to or from a hospital or a doctor's office for necessary treatment.

TOTAL DISABILITY AND NON-CONFINE-MENT. When, as the result of sickness and commencing while this policy is in force or immediately following a period of disability for which indemnity is payable under Paragraph A of this Part, the Insured is wholly and continuously disabled and prevented from engaging in each and every duty pertaining to his occupation although not confined within the house, the Company will

pay periodically the Monthly Indemnity stated in the Schedule for the period of such disability not to exceed the Maximum Period of Non-Confining Sickness Indemnity stated in the Schedule, as result of any one sickness."

Mr. Cobb suffered a severe heart attack on November 26, 1965, and was hospitalized for several days. He was paid under the confinement clause, II A, of the policy until August 16, 1966. Each time a monthly payment was sent to Mr. Cobb he filled out and returned a form statement as to his then condition. Upon receipt of the August statement from Mr. Cobb advising that he had not been confined to the house since his last report, the company stopped payments under the II A clause of the policy, but continued payments under the "total disability and non-confinement" clause, II B, of the policy. Payments were continued under this clause until January, 1967, the last check being dated January 6, 1967. On February 8, 1967, the company wrote to Mr. Cobb as follows:

"A representative of our company attempted to call on you at your home, January 26, 1967. When he arrived at your home he was advised by your wife that you were at the office. At that time, he briefly discussed your claim with your wife and it appears now that your health has improved now to the point that you can now perform the lighter duties of your occupation.

Since your policy, with our company, provides benefits only during the period of time that you are totally disabled, unable to perform each and every duty of your occupation, it appears at this time, that your claim would not qualify for further benefits."

No payments were made after January 6, 1967, and on February 8, 1969, Mr. Cobb filed his complaint setting out his insurance contract and alleging that on or about November 26, 1965, he suffered a heart attack

and has been totally and permanently disabled and confined within the meaning of his policy since that date, and that the company owes him $9,600 in monthly benefits. He prayed judgment for that amount.

In its answer, the company admitted the issuance of the policy but denied that Mr. Cobb was totally disabled within the terms of the policy. The jury returned a verdict for Mr. Cobb for $9,600 and judgment was entered thereon. On appeal to this court the company relies on the following point for reversal:

"The trial court erred in refusing to direct a verdict in favor of the appellant and against the appellee on the separate issue of whether appellee was necessarily and continuously confined to his house within the meaning of the law, since there was no substantial evidence upon which a jury verdict in favor of appellee on this issue could be supported."

At the trial Mrs. Cobb testified that prior to his heart attack, Mr. Cobb got up around 4:00 or 5:00 o'clock and went to work; that he would return to the house for breakfast about 7:30 a.m. and then leave and return for lunch and go back to work until 6:00 or 6:30. She testified that now, on a normal day, Mr. Cobb gets up around 7:30, eats breakfast and leaves the house from around 9:00 to 9:30. He returns at noon and rests in bed for two or three hours; he then leaves about 3:00 and returns about 5:00 or 5:30.

We deem it unnecessary to detail all of the testimony relating to Mr. Cobb's activities. He drives his automobile, attends various corporate board meetings, attends church and attends football games. Mr. Cobb testified that he attended regular monthly board meetings of Commonwealth Federal Savings & Loan Association in Little Rock and doesn't think he missed any of the regular meetings during 1967. Mr. Cobb visited relatives in Houston, Texas and in Milton, Florida, and took one Carribean cruise driving to New Orleans and back for that purpose. As a mat-

ter of fact all the evidence is to the effect that Mr. Cobb is completely unrestricted as to when, how, and where he goes. He is only restricted in what he does and the manner in which he does it. He can walk as far as four miles but walks slowly. He goes to his office regularly but does no work. He visits his farm operations but gives no orders. He avoids heat, strenuous exercise, excitement and worry.

The company does not question Mr. Cobb's proof of total disability within the provisions of clause II B of the policy, it only questions the sufficiency of the evidence as to house confined disability under II A of the policy. At the close of the testimony, the company moved for a "directed verdict in its favor on the issue of house-confining disability for the reason that there is no evidence in the record from which the jury could reasonably determine that the plaintiff has been house confined within the meaning of the law," and the motion was denied. The company then requested a jury instruction requiring the jury to find for the company on the issue of house confinement and this requested instruction was refused. The appellee Cobb then requested an instruction as follows:

"Plaintiff J. D. Cobb, has the burden of proving by a preponderance of the evidence, that from the onset of his sickness in December 1965 he has been wholly and continuously disabled and prevented from engaging in each and every duty of his occupation and that he has been necessarily and continuously confined within the house as those provisions have been explained to you. If you find from a preponderance of the evidence that he has met this burden you must award him the amount to which you find he is entitled."

The court refused this instruction as requested, and gave instead the company's requested instruction No. 11 A as follows:

"Under the law, the phrase 'necessary and con-

tinuously confined within the house,' as contained in the policy sued on, does not literally require the plaintiff to continuously remain within the house in order to recover. It is possible for a person to be necessarily and continuously confined within the house even though he goes outside his house, for limited periods of time, to take a reasonable amount of exercise, to subject himself to fresh air and sunshine, or to engage in non-strenuous activities on a limited and reasonable basis, if these activities are part of a prescribed course of therapy suggested by his physician. In addition, a person may go outside his house for the purpose of obtaining necessary medical treatment and still be considered 'necessarily and continuously confined within the house,' under the law.

If you find from a preponderance of the evidence that in any of the months in question the plaintiff's activities did not differ from or exceed the type of activities just mentioned, and if those activities or events were only performed occasionally, and not on a regular and systematic basis, then those activities or events would not prevent you from finding that the plaintiff was necessarily and continuously confined within the house."

We agree with the appellant that there is no evidence in the record that Mr. Cobb is confined to his home and there is no medical, or other, evidence that he should be. We conclude, therefore, that the court should have granted the company's motion for a directed verdict in its favor on the issue of house confinement. We do not say what conclusion we may have reached prior to our decision in *Michigan Life Ins. Co.* v. *Hayes*, 231 Ark. 614, 332 S. W. 2d 593 (1960), but in that case we practically issued a caveat as to future cases involving confinement clauses in insurance contracts when we said:

"To state our position, we simply say that this Court is unwilling to further extend or further liberalize

the interpretation given the confinement clause in the *Sammons* case, [224 Ark. 31, 271 S. W. 2d 922] *i. e.,* that case represents the ultimate peak of liberal construction which we have approved—or will approve in future cases. Of course, appellee asserts that this case calls for no more liberal construction than the *Sammons* case. As stated, we disagree with this assertion; but if it be correct—then we are modifying our previous interpretation."

In *Michigan Life Ins. Co.* v. *Hayes,* the activities of Dr. Hayes, the appellee insured, were not as varied as those of Mr. Cobb in the case at bar. Dr. Hayes fished, deer hunted, played checkers at the Elks Club, visited with friends and sometimes drove his automobile. He sat in a chair on a deer stand when hunting deer, and when he became tired he lay down in his nearby automobile or jeep. He had someone else carry the boat motor to and from the boat and pull the boat from the water when fishing. All of Dr. Hayes' activities were recommended as therapeutic measures by his attending physician, and Mr. Cobb's activities were approved by his physicians in the case at bar. Like Mr. Cobb in the case at bar, Dr. Hayes went to his office and opened his mail. He no longer practiced his medical profession, and like Mr. Cobb, he was totally disabled. In reversing a judgment for Dr. Hayes in that case, this court said:

"We have reached the conclusion that this judgment must be reversed. In doing so, we are not unmindful of the fact that the literal language of the confinement clause in the *Sammons* case, and other cases cited in that opinion, was violated by each respective insured, and yet recovery was allowed. Arkansas had consistently given a liberal construction to confinement clauses, but we think even liberality has its limits. Of course, it would be ridiculous to hold an insured to the very letter of the clause, for, as has been pointed out by other jurisdictions, such an interpretation would prevent his leaving the house during danger of flood, fire, or destruc-

tion. So, it is apparent that a reasonable construction should, and must be given, rather than interpreting the contract from a strict, literal view. Certainly it is reasonable for one to go outdoors for fresh air—to visit with friends—to walk for exercise—to pick up mail—to sometimes engage in other activities for pleasure, and to even engage in occasional work. We think the evidence in this case goes far beyond such activities, for the activities of Dr. Hayes seem to be regular and systematic; in fact, one would almost gain the impression that the doctor is away from his home as much as he remains in it. *In fact, we do not see a great deal of difference in his routine and that of one who has retired because of age or length of service.*

To affirm this judgment would actually mean that there can be no such contract in Arkansas as provided in the confinement clause, and that a confinement clause has the exact and identical meaning as total disability, *i. e.,* if an individual is unable to perform all the substantial and material acts necessary to the prosecution of his business or occupation in a customary and usual manner, he is totally disabled—and confined. Not only would such a construction be completely unfair to an insurance company, but it could also have the result of preventing this coverage from being available for persons who would qualify, for a company might well withdraw this provision from contracts sold in states giving so liberal construction."

In *Guarantee Trust Life Ins. Co.* v. *Koening,* 240 Ark. 650, 401 S. W. 2d 216, cited by the appellee, the trial court *refused* a requested instruction on house confinement and we held that such refusal was error under the undisputed facts of that case. The substantiality of the evidence as to house confinement was not an issue in *Koening.*

We recognize that this court has long been committed to the rule that a verdict should not be directed

against the plaintiff if there is any substantial evidence to support a finding in favor of the plaintiff, (*Sanders v. Keenan and Merritt*, 244 Ark. 585, 426 S. W. 2d 399) but when the evidence in the case at bar is considered in the light most favorable to Mr. Cobb, there is no substantial evidence that he was confined to his house because of his heart attack after August 26, 1966, when Mr. Cobb reported to the company that he was no longer confined to the house. On July 26, 1966, Mr. Cobb reported that he had been confined to the house from June 26 to date. His monthly reports thereafter stated that he had not been confined to the house except in the December report dated January 4, 1967; he stated he had been confined to the house "some" since the last report.

It must be remembered that there were two separate provisions clearly set out in the contract under which Mr. Cobb was entitled to $400 per month while he was totally disabled. These two provisions have to do with the *extent* of his total disability. Under the first provision, II A, he was entitled to $400 per month *indefinitely* so long as his total disability was such that he was necessarily and continuously confined to the house. Payments were made under this provision as long as Mr. Cobb reported that he was so confined, and until he reported that he was no longer so confined, in August, 1966.

Under the second provision, II B, as we read the contract, Mr. Cobb was entitled to $400 per month for a period of *one year* after his total disability was no longer such that he was necessarily and continuously confined to the house. Under this provision Mr. Cobb was paid $400 per month from August, 1966, to January 6, 1967, at which time payments were stopped by the company on the theory that Mr. Cobb was no longer totally disabled. The record indicates that the company is satisfied with the proof of total disability under clause II B of the policy, and that it stands ready to pay any amount it owes under that provision.

The state of the record is such that we do not attempt to fix the exact amount of money judgment to which Mr. Cobb is entitled under clause II B of his policy, so we remand this case to the trial court for that purpose.

Reversed and remanded.